## MIFFLIN et al. v. BERRY and HOWELL, Administrators of Howell.

Court of Common Pleas.   December 3, 1814.

*Clayton's Notebook, 38.*

*Hall* for defendants.   The manner in which the rule of reference was entered into goes to show that the object and intention of the parties was that such a judgment should be rendered as would bind the house and lot in Camden and nothing more, for the manner prescribed by the Act [of] Assembly, 2 Del.Laws 1070, c. 7, s. 6, is here strictly pursued.   And the fact that the question of assets was not before the auditors also proves that

it never entered into our imaginations that the judgment about to be given was to be anything more than a special judgment of assets, intended to secure the house and lot, because we well knew that the estate of our intestate was insolvent, and that the assets were not sufficient to pay this debt.

Amicable actions are not governed by the same rules with other actions as regards the pleading of the special matter. In amicable actions everything is put in issue, and the omission to take advantage of any special matter is not like neglecting to plead it in other actions; it does not conclude the party unless substantial justice be done him. Then, as everything was in issue, so was *plene administravit*. Now if *plene administravit* be pleaded, the jury must find assets, or no judgment can be rendered against defendant, 5 Cranch 19, where it is further laid down that judgment cannot be rendered for any greater sum than the amount of assets found, and that the contrary cases have been overruled. According to the case cited there, judgment could not be entered against us without a finding of the amount of assets in our hands. Suppose a jury, after issue of *plene administravit,* find a verdict for plaintiff—£50. Is not that of course saying defendant has assets—£50? So now this award, for by the statute, 2 Del.Laws 1070, the award is as conclusive as the finding of a jury or the Chancellor.

Our judgment of assets or if assets is very different from the English judgment of assets *quando acciderint,* and leaves the question of assets entirely open. (On *quando acciderint* there are no assets now, the judgment is futurely, *semble.*) The legal effect and operation of a general judgment against an administrator or executor is in this state a disputed point.

An amendment should or should not be made according as justice will or will not be done by it. 1 Binn. 369. A judgment *de bonis propriis* against an executor was amended by making it *de bonis testatoris si* etc., *et de bonis propriis si non* etc., in the case of *Short v. Coffin, Executor of Coffin,* 5 Burr. 2730.

*Clayton, contra.* The manner in which the rule of reference was entered into proves nothing against us. It merely shows that we did not intend to rely on the personal estate alone for payment. If it had been entered otherwise, the personal estate only would have been bound; judgments under the Act of Assembly bind the land also. Our intention was to secure the debt upon the real and personal estate, and this was the only way of attaining our object.

The plaintiffs contended that the defendants had assets in their hands of which the defendants had notice and did not make

it a point before the referees, which we contend is tantamount to an admission that there were assets, and this Court will not now permit them to deny what they have once admitted.

The evidence establishes the fact that the rendition of such a judgment as would be a lien upon the house and lot in Camden was not our sole object in view.

There is in this rule of reference a special provision, which I do not think is to be found in any other on the records of this Court: "That the defendants shall have every advantage and benefit which they might have before a jury." This shows pretty clearly the spirit with which defendants entered into the rule. It evinces a determination, which afterwards more clearly manifested itself, of contesting every inch of ground; nothing was omitted which offered the slightest prospect of success. Yet the question of assets was not before the auditors; clearly because that point was not considered tenable. The want of assets rests entirely on assertion. There is no proof of it.

*Hall* now rose and offered in evidence the administration accounts, observing that he had not adverted to them at the proper time. *Clayton* objected slightly, and the Court permitted them to be read.

[*Clayton,* continuing.] The position laid down on the other side, that the mere entry of an amicable action puts everything in issue, is incorrect. In the latitude contended for it would be productive of a thousand inconveniences. It would go to the establishment of another position, that the referees in their report might negative every plea which might have been made to a common suit for the same cause, which at once shows its absurdity. The true rule is, nothing is in issue but what is objected and brought before the auditors; and here it resembles a common suit on the record. Now if an administrator plead *non assumpsit,* and it is found against him, the Court will not set aside the verdict to let him in to plead *plene administravit.* So here, after defendants have had a fair trial upon the objections and evidence which they chose to lay before the auditors, they shall not be permitted to come into this Court and say they had other pleas which were never before their judges, and therefore ask the Court to set aside our regular judgment, for such in effect is the object of the motion. A party shall never take advantage of his own laches.

In all arbitration cases the objections of the parties to the report of the referees must be made at and during the term to which it is made returnable, which has not been done in this case. The report was returned to May Term, 1814.

We have laid before the Court transcripts of several judgments obtained by default and confession by the children of the intestate against these defendants. If there be in fact a deficiency of assets, the defendant must have wasted the estate. It appears from the administration accounts laid before the Court that the defendants have retained considerable sums of money for real or pretended debts due to themselves, and should the Court be against us on the motion, they will order that these sums shall be considered unadministered and go to the payment of our debt.

It is said on the other side that the legal effect and operation of a general judgment is a litigated point and intimated that it was thought by them that the effect of this judgment would be the same with that of a judgment of assets. This is not now the question, but it may be observed that the defendant's attorneys were too well acquainted with the law to doubt, or, if they did, would not have tried an experiment in so important a cause. 5 Cranch is not in point, because here *plene administravit* was never in issue. The ground upon which the court went in 5 Burr. 2735 was that the judgment *de bonis propriis* was a mere misprision of the clerk and liable to be reversed for error. Amendments are always in support of judgments, and upon an allegation of some mistake of the clerk which has occasioned the error upon the record, or upon the production of some precedent proceeding by which the amendment may be made. Nothing can be called an amendment that does not rectify some error appearing upon the face of the record. The true object of this motion is not an amendment but the substitution of one regular judgment for another. The ground upon which this rule to show cause was granted was that the intention of the parties was merely to bind the house and lot at Camden by the judgment. In their attempts to prove this supposal, the defendants have completely failed.

*Hall,* in reply. The Court will do the plaintiff no injury in making the amendment we ask. While if our motion be not granted, we, and particularly Howell, the co-administrator, who never consented to the rule of reference, or even knew of it until after judgment was entered, will suffer the greatest injury, as we shall have to pay the debt out of our own pockets.

We should certainly have contended the point of assets had there not been a perfect understanding among us that the house and lot only could be bound. The special provision in the rule of reference was mere surplusage and gave us no advantage—*nil operatur.*

I do contend that in amicable actions all is in issue and 5 Cranch 19 is in point. I admit that where the referees make no

mention of a special matter they *ipso facto* negative it. Now 5 Cranch determines that a mere negative of a plea of *plene administravit* by a jury is insufficient to support a judgment against an administrator. They must find the precise amount of assets. The conclusion flows irresistibly that the judgment here is not supported by the report of the referees.

Our objections are not so much to the award as to the judgment entered on it. We cannot be too late then, and the argument of laches can apply only to the award, which we do not move to alter. Amendments are frequently made when there is neither any misprision of the clerk, nor anything to amend by, nor any error on the face of the report.

The judgments for the children were *bona fide*. We could not resist their claims. We have retained for our own debts, as we were in conscience entitled to do.

And if the Court should be against us on every other ground, they must certainly amend a judgment entered up against good faith.

NOTE. The Court in the following vacation ordered the amendment to be made without giving any reasons.